UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
ALEXANDER INTERACTIVE, INC.,          : 12 Civ. 6608 (PKC) (JCF)
ALEXANDER SCHMELKIN, and JOSH         :
LEVINE,                               :          MEMORANDUM
                                      :          AND  ORDER
            Plaintiffs,               :
                                      :
    - against -                       :
                                      :
ADORAMA, INC., ADORAMA ENTERPRISES    :
LLC, EUGENE MENDLOWITS, and MENDEL    :
MENDLOWITS,                           :
                                      :
            Defendants.               :
- - - - - - - - - - - - - - - - - - - -:
MENDEL MENDLOWITS, ADORAMA            :
ENTERPRISES LLC, ADORAMA, INC., and:
EUGENE MENDLOWITS,                    :
                                      :
            Counter Claimants,        :
                                      :
    - against -                       :
                                      :
ALEXANDER INTERACTIVE, INC, JOSH      :
LEVINE, and ALEXANDER SCHMELKIN,      :
                                      :
            Counter Defendants.       :
- - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

    The  plaintiffs,  Alexander  Interactive,  Inc.,  Alexander

Schmelkin, and Josh Levine (collectively, "Alexander Interactive")

have  filed  an  omnibus  discovery  motion  seeking  (1)  to  compel

production  of  documents  from  the  defendants,  Adorama,  Inc.,  Adorama

Enterprises,  LLC,  Eugene  Mendlowits,  and  Mendel  Mendlowits

(collectively,  "Adorama")  and  from  non-party  Magento,  Inc.

("Magento"); (2) for in camera review of all of the documents on

Magento's  privilege  log;  (3)  to  extend  the  duration  of  certain

depositions, some of which have already been taken; (4) to extend

1

discovery deadlines; and (5) for sanctions.[1]  The motion is granted in part and denied in part.

Background[2]

The plaintiffs allege that retailer Adorama retained Alexander Interactive, a web design and engineering firm, in connection with re-engineering Adorama's website, which was to run on a Magento e-commerce platform.  (Second Amended Complaint ("2d Am. Compl."), ¶¶ 9-10, 15, 19).  Alexander Interactive performed preliminary work on the redesign project pursuant to the Master Services Agreement (the "Adorama Agreement").  (Plaintiffs' Motion (I) to Compel Production of Documents (II) to Re-Produce Witnesses and Extend Deposition Durations (III) for In Camera Inspection of Alleged Privileged Documents (IV) to Extend Fact Discovery Deadline and (V) for Sanctions under FRCP 37(a)(5)(A) ("Pl. Memo.") at 3; 2d Am. Compl., ¶¶ 15-16; Schedule A dated June 2, 2010, attached as Exh. B to 2d Am. Compl., § 2).  The parties later amended the Adorama Agreement, expanding Alexander Interactive's scope of work for the project and requiring additional payments from Adorama.  (Pl. Memo. at 4; Schedule B dated Dec. 21, 2010, attached as Exh. C to 2d Am. Compl., § 6 & App. C; Escrow Agreement dated Dec. 21, 2010,

---

[1]  The plaintiffs withdrew, without prejudice, the motion insofar as it sought relief against non-party Samsung Electronics. (Notice of Plaintiff's Withdrawal, Without Prejudice, of Motion to Compel Production of Documents from Samsung Electronics dated Oct. 24, 2013).

[2] This recitation of facts is taken from the allegations in the operative complaint and counterclaims, as well as the parties' submissions in connection with this motion, and includes only those allegations that are relevant to the disputes presented here.

attached as Exh. D to 2d Am. Compl.).  During the course of its work, Alexander Interactive executed a Custom Services Agreement with Magento (the "Magento Agreement"), by which Magento would provide consulting and other services, including coding assistance and review.  (2d Am. Compl., ¶¶ 20, 24; Magento Custom Services Agreement dated Nov. 10, 2010, attached as Exh. E to 2d Am. Compl.; Pl. Memo. at 9).

Alexander Interactive asserts that Magento employee Vitaliy Korotun performed the work contemplated in the Magento Agreement, "programming the architectural interface (i.e. the foundation) for the Adorama website."  (Pl. Memo. at 9).  Alexander Interactive developed the "Architectural Documents," which "comprised the Front-end and Back-end [] of the proposed new Adorama website," and then began writing code.  (Certification of Alex Schmelkin dated Oct. 15, 2013 ("Schmelkin Cert."), attached as Exh. A to Pl. Memo., ¶¶ 7-8 & nn.1-6).

The relationship degenerated from there.  The plaintiffs contend that Adorama repeatedly requested changes to the site that were outside the agreed-upon scope of work, failed to pay incurred charges, and refused to perform user acceptance testing on the "Code Deliverables" that Alexander Interactive designed and delivered.  (Schmelkin Cert., ¶¶ 9-11; 2d Am. Compl., ¶¶ 31-35). For its part, Adorama asserts that Alexander Interactive mismanaged the project, failed to meet deadlines, and delivered shoddy work that had not been quality-tested.  (Declaration of Glen Holman dated October 28, 2013 ("Holman Decl."), ¶ 10; Answer, Affirmative

Defenses and Counterclaims ("Answer"), ¶¶ 213, 215, 217-20, 228, 230-34, 253-58).  In March 2012, Alexander Interactive sent Adorama a termination notice.  (2d Am. Compl., ¶¶ 37-39; Letter of Alexander Schmelkin dated March 13, 2012, attached as Exh. G to 2d Am. Compl.).  In order to stave off termination of the contract, the parties agreed that Magento would audit Alexander Interactive's work.  (Holman Decl., ¶ 11).  The audit found significant problems with the work performed, which Alexander Interactive blames, in part, on code written by Mr. Korotun.  (Pl. Memo. at 2).

Ultimately, Adorama launched a revamped website and solicted Magento to perform certain services originally covered by the Adorama Agreement.  (2d Am. Compl., ¶¶ 48, 60; Pl. Memo. at  5, 9-10).  Alexander Interactive alleges that Adorama "stole the front-end and back-end of the . . . [s]ite developed by [Alexander Interactive]," and infringed its intellectual property in various other ways.  (Pl. Memo. at 5; 2d Am. Compl., ¶¶ 44-57, 61-65).

Discussion

A.   Meet and Confer Obligations

The defendants contend that there was no attempt to meet and confer to resolve this dispute.  (Defendants' Memorandum of Law in Opposition to Plaintiffs' (I) Motion to Compel Production of Documents, (II) to Re-Produce Witnesses and Extend Depositions, (III) to Extend Fact Discovery Deadline and (IV) for Sanctions under FRCP 37(a)(5)(A) ("Def. Memo.") at 2, 15-19).

When a party moves for an order compelling disclosure or discovery, Rule 37(a)(1) of the Federal Rules of Civil Procedure

requires that the motion "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." See Debellis v. Bize, No. 11 Civ. 7113, 2013 WL 935764, at *1 (S.D.N.Y. March 11, 2013).   The certification must

> set forth . . . essential facts sufficient to enable the court to pass a preliminary judgment on the adequacy and sincerity of the good faith conferment between the parties[,] such as the names of the parties who conferred or attempted to confer, the manner by which they communicated, the dispute at issue, as well as the dates, times, and results of their discussions, if any.

AIU Insurance Co. v. TIG Insurance Co., No. 07 Civ. 7052, 2008 WL 4067437, at *4 (S.D.N.Y. Aug. 28, 2008) (alterations in original) (internal quotation marks omitted).   Here, the certification is deficient, merely stating:

> The Plaintiffs hereby certify, pursuant to FRCP 26(c)(1) [sic] that they, on the one hand, and the Defendants, Magento and Samsung, on the other hand, respectively [sic], have engaged in good faith efforts to resolve these discovery issues via a series of meetings and conferences in connection therewith in an effort to resolve these discovery disputes without Court Action.

(Pl. Memo. at 17).

Nevertheless, Rule 37 is satisfied as long as the parties have in fact met and conferred, even if they fail to submit a proper certification.   See Care Environmental Corp. v. M2 Technologies Inc., No. 05 CV 1600, 2006 WL 1517742, at *3 (E.D.N.Y. May 30, 2006) (citing Matsushita Electronic Corp. of America v. 212 Copiers Corp., No. 93 Civ. 3243, 1996 WL 87245, at *1 (S.D.N.Y. Feb. 29, 1996)) (affirming order compelling discovery where plaintiff had

met and conferred with defendant but did not submit certification
to that effect).  The parties comply with the rule's obligations
when they

> meet, in person or by telephone, and make a genuine
> effort to resolve the dispute by determining . . . what
> the requesting party is actually seeking; what the
> discovering party is reasonably capable of producing that
> is responsive to the request; and what specific genuine
> issues, if any, cannot be resolved without judicial
> intervention.

AIU Insurance Co., 2008 WL 4067437, at *3 (alteration in original)
(quoting Prescient Partners, L.P. v. Fieldcrest Cannon, Inc., No.
96 Civ. 7590, 1998 WL 67672, at *3 (S.D.N.Y. Feb. 18, 1998)).  "A
live exchange of ideas and opinions is required."  Prescient
Partners, 1998 WL 67672, at *2 (internal quotation marks omitted).
From the materials submitted here, it is clear that the parties did
not meet and confer in good faith.

To be sure, the parties exchanged numerous letters and e-mails
regarding discovery issues.  The problem is that the plaintiffs'
communications do not show a willingness to compromise or find
solutions.  For example, in an e-mail dated September 20, 2013, the
plaintiffs demanded production of the "[f]ull source code of
Adorama's present site," among other materials.  (E-mail of Denise
L. Savage dated Sept. 20, 2013, attached as Exh. C to Declaration
of Matthew Sheppe dated Oct. 28, 2013 ("Sheppe Decl.")).  The
defendants pointed out, repeatedly, that the parties had agreed
that the plaintiffs would hire a third party to review the source
code at Adorama's headquarters and had memorialized that agreement
in a joint letter to the Honorable P. Kevin Castel, U.S.D.J., in

6

May 2013. (Letter of Daniel J. Brown dated Sept. 25, 2013, attached as Exh. E to Sheppe Decl., at 2; E-mail of Daniel J. Brown dated Oct. 3, 2013, attached as Exh. F to Sheppe Decl., at 2; Letter of Daniel J. Brown dated Oct. 11, 2013, attached as Exh. J to Sheppe Decl., at 1; Letter of Daniel J. Brown dated May 7, 2013 ("May 7 Joint Letter"), attached as Exh. A to Sheppe Decl., at 7). Rather than addressing this agreement and explaining why they should no longer be bound by it, the plaintiffs' responses simply ignore its existence, demand production of the source code, and threaten to file a motion to compel.[3] (E-mail of Denise L. Savage dated Oct. 4, 2013 ("Savage 10/4/13 E-mail"), attached as Exh. G to Sheppe Decl., at 1-2; E-mails of Denise L. Savage dated Oct. 10, 2013 ("Savage 10/10/13 E-mails"), attached as Exh. I to Sheppe Decl.). The plaintiffs followed a similar strategy with regard to the other documents at issue here, refusing to engage in a "live exchange of ideas and opinions," Prescient Partners, 1996 WL 67672,

---

[3] Plaintiffs' counsel did discuss the agreement during the deposition of one of Adorama's witnesses, but still failed to explain why the agreement had become unacceptable to her client, merely stating that she had "change[d her] mind." (Excerpts from Transcript of Deposition of Chaim Klar dated Oct. 30, 2013, attached as Exh. 11 to Plaintiffs' Reply to Defendants' and Magento, Inc.'s Respective Objections and in Further Support of Plaintiffs' Motion (I) to Compel Production of Documents (II) to Re-Produce Witnesses and Extend Deposition Durations (III) for In Camera Inspection of Alleged Privileged Documents (IV) to Extend Fact Discovery Deadline and (V) for Sanctions under FRCP 37(a)(5)(A) ("Reply"), at 185-86). Moreover, although the plaintiffs assert that disputed document requests were discussed at certain other depositions (Reply at 2), they fail to present any information about the conduct of the discussions, so it is impossible to determine whether they were approached with any greater flexibility than is evidenced in the written communications.

at *2, with the defendants to resolve the disputes (Savage 10/4/13 E-mail; Savage 10/10/13 E-mails).  That is not conferring in good faith.

While failure to meet and confer in good faith is sufficient reason to deny a motion to compel, courts have recognized that the merits of a discovery motion may be addressed "where the meet-and-confer would have been futile."  Gibbons v. Smith, No. 01 Civ. 1224, 2010 WL 582354, at *2 (S.D.N.Y. Feb. 11, 2010); see also Prescient Partners, 1998 WL 67672, at *3 (collecting cases).  While this is a close case, the papers submitted with this motion indicate that both sides have dug in -- indeed, the defendants now seem to take the (untenable) position that the plaintiff is not entitled to the source code at all, having titled one section in their opposition "Plaintiffs Are Not Entitled to Adorama's Source Code." (Def. Memo. at 8).  Ordering the parties to meet and confer is unlikely to resolve these disputes.  See Time Inc. v. Simpson, No. 02 Civ. 4917, 2002 WL 31844914, at *2 (S.D.N.Y. Dec. 18, 2002) ("[Meet and confer] requirements are designed to promote efficiency in litigation, and that goal would not be advanced by further delay in resolving these issues on the merits.").

B.   Motion to Compel Adorama to Produce Documents

Alexander Interactive seeks four categories of documents: (1) the aforementioned source code; (2) configuration files -- that is, "files setting forth initial settings, server processes and operating system settings" (Def. Memo. at 11) -- for Adorama's AS400 System, which "contains all of Adorama's accounting,

financial, inventory control, [and] warehouse management . . .
information" (Def. Memo. at 11); (3) configuration files for
Adorama's Endeca database and search engine, which "interact with
the website platform to provide [an] end user [who has searched for
a product on the website] with the appropriate search results"
(Def. Memo. at 12); and (4) "commit logs" for Adorama's website,
which purportedly will show "when, by whom, and exactly what
changes were made to [the] website source code" (Pl. Memo. at 6).

    1.   Source Code

    To the extent that Adorama claims that the source code is
irrelevant (Def. Memo. at 8-10), it is incorrect.  "Although not
unlimited, relevance, for purposes of discovery, is an extremely
broad concept."  Chen-Oster v. Goldman, Sachs & Co., __ F.R.D. __,
2013 WL 5629831, at *2 (S.D.N.Y. 2013) (internal quotation marks
omitted).  Here, Alexander Interactive has alleged that Adorama
copied the source code that Alexander Interactive created.  The
relevance of the source code is, therefore, obvious, and Adorama
has not "justif[ied] curtailing [its] discovery."  Id.

    As noted above, the parties earlier agreed that Alexander
Interactive would hire a third party to review the source code at
Adorama's headquarters.  (May 7 Joint Letter at 7).  This
reasonable compromise was made after the parties had met and
conferred. (Sheppe Decl., ¶¶ 2-3). Although Alexander Interactive
did not explain, prior to filing this motion, why that agreement is
no longer acceptable, it now contends that it "retained an expert
witness [in October] and ha[s] been advised by this witness of his

needs to engage in an analysis of all of the related source code side by side with [the] data provided by [Alexander Interactive]," that the expert has "notified counsel that his wife has been diagnosed with a very serious form of cancer and [he] will [therefore] require working from his home as often as possible," and that it is too late to retain a different expert. (Reply at 5-6). There is no allegation of an intrinsic obstacle to analyzing the Adorama source code along with the Alexander Interactive source code at Adorama's headquarters. As I understand it, the snag is that the expert that the plaintiffs have hired will have difficulty performing the review at the headquarters.

The plaintiffs agreed at the beginning of May 2013 that a third party of Alexander Interactive's choosing would evaluate the source code at Adorama's offices and identify relevant sections that should be reproduced for use in this litigation. Difficulties attendant on the fact that Alexander Interactive did not retain an expert until months later is not a reason to scuttle the parties' agreement. Moreover, there is no representation that such a review is impossible or even impracticable. The plaintiffs have presented no evidence as to how much time this review and identification will take, and so there is no basis to find that it will interfere with the expert's (understandable) desire to "work[] from his home as often as possible." (Reply at 5). In short, the plaintiffs and defendants are directed to abide by the agreement memorialized in the May 7 Joint Letter regarding Adorama's source code. To the extent that Alexander Interactive seeks other relief as to that

discovery, the motion is denied.[4]

> 2.   AS400 Configuration Files

The party seeking discovery has the burden of demonstrating
its relevance.  Chen-Oster, __ F.R.D. at __, 2013 WL 5629831, at
*2.  Alexander Interactive has not carried this burden.  Rather,
its motion propounds generalities about the necessity of production
of "digital data," lumping the AS400 files together with the
Adorama source code discussed above.  (Pl. Memo. at 7).  However,
the defendants point out that Alexander Interactive never "provided
development/coding work for the AS400," which "predate[s] Adorama's
contractual relationship with [Alexander Interactive]."  (Holman
Decl., ¶ 22).  Adorama did provide Alexander Interactive with feeds
containing information about Adorama's products, but, as the
defendants indicate, there is no need for Adorama to produce these
because Alexander Interactive already has possession of them.
(Holman Decl., ¶ 23).

The plaintiffs do not address these contentions; indeed, they
expressly disclaim responsibility for rebutting them, citing my 10-
page limit for reply briefs.[5]  (Reply at 3).  Given that the
plaintiffs' demonstration of relevance in their opening brief was
deficient and that the plaintiff did not seek permission to file an

---

[4] In their Reply, the plaintiffs include a disquisition on
judicial estoppel and the reasons it does not apply here.  (Reply
at 4).  My decision is not based on such a doctrine, but, rather,
on the parties' reasonable prior agreement on this issue.

[5] Directing the Court to "review the [] Second Amended
Complaint and . . . Master Services Agreement" (Reply at 3) is not
helpful.

oversized reply, this is no excuse.  The plaintiffs' motion to compel is denied as to the AS400 configuration files.

### 3.   Endeca Configuration Files

The plaintiffs' argument regarding the Endeca Configuration files suffers from the same defects discussed above: there is no serious attempt to explain how these files are relevant.  And the defendants note that "none of the deliverables [Alexander Interactive] was to have provided under the [Adorama Agreement] concerned the config[uration] files for the Endeca server." (Holman Decl., ¶¶ 25-26).  It therefore appears that the configuration files are not relevant to Alexander Interactive's claims.

### 4.   Commit Logs

Because the commit logs show details of changes made to source code, they are relevant.  Adorama asserts that it "does not maintain commit logs for the AS400 system, the Endeca server or any javascript portions of its source code," but does "for its .Net source code." (Holman Decl., ¶¶ 28-29).  The defendants shall make these commit logs available to the plaintiffs' expert.

### B.   Motion to Compel Magento to Produce Documents

Alexander Interactive served a subpoena duces tecum on non-party Magneto, which has consented to the jurisdiction of this Court for the limited purpose of evaluating its compliance with the subpoena.  (Letter of Patrick J. Sweeney dated May 30, 2013, attached as Exh. 4 to Declaration of Patrick J. Sweeney dated Oct. 28, 2013 ("Sweeney Decl."), at 1).  Magento has produced a

significant number of documents pursuant to the subpoena. (Letter of Kyong Mi-Kim dated May 9, 2013 ("Mi-Kim 5/9/13 Ltr."), attached as Exh. 2 to Sweeney Decl., at 1). Alexander Interactive now seeks to compel production of seven categories of documents from Magento: (1) "Magento's certification results for [Alexander Interactive] Magento's Code Review Guidleines"; (2) Magento's coding guidelines and standards; (3) performance reviews for Mr. Korotun; (4) Mr. Korotun's schedule for "the next two months" or, in the alternative, Mr. Korotun's address; (5) Mr. Korotun's time logs; (6) document retention policies for Magento and eBay, which owns Magento; and (7) documents from Mr. Korotun's computer relating to the Adorama project.[6]   (Pl. Memo. at 12).

### 1.   Certification Results

Magento informed Alexander Interactive over five months before this motion was filed that it had searched for such results and could not locate any. (Mi-Kim 5/9/13 Ltr. at 2). This request is frivolous and the motion to compel is denied as to these (non-existent) documents.

### 2.   Coding Guidelines and Standards

Magento has informed the plaintiffs that it adheres to the Zend Framework Coding Standard for PHP and that these guidelines are publicly available on the Internet. (Nonparty Magento, Inc.'s

---

[6] I note that, again, the plaintiffs have failed to make a serious attempt to resolve this dispute without court intervention. Indeed, when the parties attempted to do so in a telephone conference regarding the subpoena, plaintiffs' counsel admitted that she had not reviewed the subpoena before the call and therefore could not state whether certain requested documents were within its scope. (Sweeney Decl., ¶ 14).

Memorandum of Law in Opposition to Plaintiffs' Motion (I) to Compel Production of Documents (II) to Re-Produce Witnesses and Extend Deposition Durations (III) for In Camera Inspection of Alleged Privileged Documents (IV) to Extend Fact Discovery Deadline and (V) for Sanctions under FRCP 37(a)(5)(A) ("Magento Memo.") at 10). Alexander Interactive complains that Magento has not informed it of the version that was in force at the time that the relevant work was completed. (Pl. Memo. at 12).

I will not order Magento to produce these publicly available documents.   I  will  however,  direct  it  to  inform  Alexander Interactive of the relevant version of the Zend Framework.

### 3.   Performance Reviews

Magento asserts that the performance reviews are irrelevant and outside the scope of the subpoena.  (Magento Memo. at 10-11). Alexander Interactive asserts that Mr. Korotun "was moved from his position  as  a  developer/architect  working  with  clients  to performing research for Magento" (Pl. Memo. at 12) and argues that "if Mr. Korotun's title and position at Magento were impacted by his performance in connection with Magento's work for [Alexander Interactive], then [this] request is 'related' to the [p]laintiffs and . . . falls under request Nos. 1, 2, 4, 5, and 8" of the subpoena (Reply at 8).

Request no. 1 seeks documents "concerning and relating to any and all services rendered by any and all [p]laintiffs to any and all [d]efendants." (Plaintiffs' Subpoena Duces Tecum to Magento, Inc.  (A  Wholly  Owned  Subsidiary  of  eBay,  Inc.)  ("Magento

14

Subpoena"), attached as Exh. 1 to Sweeney Decl., at 8-9).
Performance reviews of Mr. Korotun that relate to his work on the
relevant project would be encompassed by this request. The
documents are also relevant, as the defendants claim that work
delivered by Alexander Interactive, some of which was performed by
Mr. Korotun pursuant to the Magento Agreement, was substandard.
(Answer, ¶¶ 215, 218-220, 228, 282-93). Magento shall produce the
performance reviews to the extent that they relate to work
performed under the Magento Agreement.[7]

### 4. Mr. Korotun's Schedule

The request for Mr. Korotun's schedule is outside the scope of
the subpoena. However, Magento has voluntarily informed the
plaintiffs that Mr. Korotun has no plans to be in the United States
during the relevant time period. (Magento Memo. at 11). As a
matter of professional courtesy, Magento shall provide Alexander
Interactive with Mr. Korotun's address in Ukraine.

### 5. Mr. Korotun's Time Logs

Magento has already produced Mr. Korotun's time records, and
the plaintiffs have been aware of that since May 2013. (Mi-Kim
5/9/13 Ltr. at 3). The plaintiffs' inclusion of this request in
this motion is frivolous.

---

[7] At a conference on May 23, 2013, Judge Castel denied the
defendants' request for all personnel files and performance reviews
for all employees of Alexander Interactive that worked on the
Adorama project, calling it a "fishing expedition." (Transcript of
Conference dated May 23, 2013, excerpts attached as Exh. 3 to
Sweeney Decl., at 42). However, this request for one employee's
performance reviews relating to the specific job at issue is
sufficiently targeted.

6.   <u>Document Retention Policies</u>

The request for document retention policies seeks documents that are outside the scope of the subpoena.  Moreover, the policies are not relevant to any claim or defense in this action.

Clearly, Alexander Interactive seeks these policies because Magento has stated that documents were deleted from Mr. Korotun's computer in the normal course of business.  (Mi-Kim 5/9/13 Ltr. at 3).  The plaintiffs have presented nothing that would support an inference that potentially relevant evidence has been spoliated.

7.   <u>Documents from Mr. Korotun's Computer</u>

As noted above, documents from Mr. Korotun's computer were deleted in the normal course of business.  The plaintiffs have been aware of this fact since April 2013.  (Letter of Patrick J. Sweeney dated April 26, 2013, attached to Mi-Kim 5/9/13 Ltr.).

C.   <u>Request for In Camera Review</u>

Alexander Interactive asks that I review, <u>in</u> <u>camera</u>, all 500 documents included on Magento's privilege log.  (Pl. Memo. at 13-14).  In response to this request, Magento served an amended privilege log, including more detailed descriptions than were included on its original log.

Magento's privilege log includes the date of each document, its author and recipients, its subject, and a description of the type of document (Privilege Log, attached as Exh. 7 to Sweeney Decl.), and therefore complies with the local rules for this District, <u>see</u> Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Local Civil Rule

26.2(a)(2)(A), (b) (requiring a privilege log to include "(i) the type of document . . . ; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other"). Alexander Interactive does not appear to challenge the sufficiency of the log; rather, it asks that I review all of the documents to ensure that they are, indeed, protected from disclosure.

I decline the invitation. "Discovery in our adversarial system is based on a good faith response to demands for production by an attorney constrained by the Federal Rules and by ethical obligations." Rozell v. Ross-Holst, No. 05 Civ. 2936, 2006 WL 163143, at *4 (S.D.N.Y. Jan. 20, 2006). In light of this, "'[i]n camera inspection is the exception rather than the rule.'" Davis v. City of New York, No. 10 Civ. 699, 2012 WL 612794, at *6 n.9 (S.D.N.Y. Feb. 27, 2012) (quoting American Steamship Owners Mutual Protection and Indemnity Association v. Alcoa Steamship Co., No. 04 Civ. 4309, 2006 WL 278131, at *2 (S.D.N.Y. Feb. 2, 2006)). Here, the plaintiffs "have provided no basis to believe that [Magento's] counsel have not honestly and accurately performed the review function in this case." Rozell, 2006 WL 163143, at *4.

   D.   Depositions

The plaintiffs seek an additional day of testimony from Magento witnesses Susie Sedlacek and Udi Shamay and from Adorama witness Glen Holman. (Pl. Memo. at 15). In addition, Alexander

17

Interactive seeks to extend the upcoming depositions of Eli Roth
and Eliazer Braun, who are programmers at Adorama, and of Mr.
Korotun, to two seven-hour days each.  (Pl. Memo. at 16).

      1.   <u>Magento Witnesses</u>

        a.   <u>Ms. Sedlacek and Mr. Shamay</u>

The request to redepose Ms. Sedlacek and Mr. Shamay is
frivolous.  These witnesses appeared for their depositions pursuant
to a subpoena issued by the U.S. District Court for the Northern
District of California.  (Magento Memo. at 13).  This Court does
not have jurisdiction over the subpoena.  Fed. R. Civ. P. 45(c)(3)
& advisory committee's note to 1991 amendments (authority to
enforce, modify, or quash subpoena rests with issuing court).

        b.   <u>Mr. Korotun</u>

The request to expand the deposition of Mr. Korotun is
premature.  Mr. Korotun, who resides in Ukraine, has not been
served with a subpoena, and compelling him to testify might well be
a difficult process, requiring the use of procedures of the Hague
Convention on the Service Abroad of Judicial and Extra-Judicial
Documents in Civil or Commercial Matters.[8]  If and when Mr. Korotun
is served, this request may be renewed.

_____

    [8] Magento asserts that, although Ukraine has acceded to the
Hague Convention, it has "opted out of civil discovery provisions."
(Magento Memo. at 9 n.4).  I express no opinion on the accuracy of
the statement, but note that the Department of State indicates that
letters of request for the taking of evidence from citizens of
Ukraine may be transmitted to Ukraine's Ministry of Justice without
processing through diplomatic channels.  Ukraine Judicial
Assistance, Travel.State.Gov, A Service of the Department of
Consular Affairs, U.S. Department of State, <u>available at</u>
<u>http://travel.state.gov/law/judicial/judicial_3027.html</u>  (last
visited Nov. 27, 2013).

3.   <u>Adorama Witnesses</u>

a.   <u>Mr. Holman</u>

The heart of Alexander Interactive's argument that it should be allowed to depose Mr. Holman again is that Adorama failed to timely produce the digital data discussed above.  (Pl. Memo. at 14-16).   However, that failure can be laid at the feet of the plaintiffs, who failed to abide by their agreement to retain a third party to review the data at Adorama's headquarters.  This is not, then, a reason to extend the duration of Mr. Holman's deposition.

Moreover, as Adorama points out, testimony regarding the documents I have ordered to be made available can be elicited during Mr. Braun's deposition.  (Def. Memo. at 21).

b.   <u>Mr. Braun and Mr. Roth</u>

There is insufficient information in the papers for me to determine whether fairness requires additional time for the depositions of Mr. Braun and Mr. Roth.   I therefore order the parties to meet and confer, in person, on this issue, keeping in mind two facts: (1) Adorama has offered that Mr. Braun will testify as to the Adorama source code (Def. Memo. at 21) and (2) there is evidence that depositions taken by Alexander Interactive have been conducted in an inefficient manner (Def. Memo. at 13-14).   The parties should work together to develop a protocol that will allow the depositions to proceed quickly and efficiently.

E.   <u>Extension of Discovery Deadlines</u>

Because Alexander Interactive will be accessing the Adorama

code -- as well as certain other discovery, which I have ordered
produced in this Order -- and as Adorama acknowledges that the
plaintiffs must have an opportunity to take deposition testimony in
light of this discovery, the discovery deadlines are extended as
requested.  Fact discovery will close on December 31, 2013; expert
discovery on April 30, 2013.

    F.   <u>Sanctions</u>

    Rule 37 prohibits an award of fees and costs if a discovery
motion is filed before the moving party has attempted to meet and
confer in good faith to resolve the dispute without court
intervention.  Fed. R. Civ. P. 37(a)(5)(A)(i); <u>Gibbons</u>, 2010 WL
582354, at *2; <u>Time Inc.</u>, 2002 WL 31844914, at *2.  Thus, even if
the plaintiffs had succeeded entirely in their motion, which they
have not, they would not be entitled to payment of expenses.

    Instead, the plaintiffs' motion has been granted in part and
denied in part, which allows me discretion to apportion reasonable
expenses.  Fed. R. Civ. P. 37(a)(5)(C).  Obviously, plaintiffs'
counsel's failure to meet and confer in good faith shows a lack of
regard for the Federal Rules and for the Court's time.  That
disregard is exacerbated by the motion itself, which includes a
number of frivolous demands.  Rather than apportion to the
plaintiffs any of the fees and costs incurred by the defendants or
by Magento in connection with this motion, however, I will caution
both parties that any future discovery motion in this case must
strictly satisfy the requirements of the Federal Rules of Civil
Procedure, including Rule 11 and Rule 37(a)(1).  Failure to comply

will subject the motion to summary denial and imposition of sanctions.

Conclusion

For the foregoing reasons, the plaintiffs' motion to compel (Docket nos. 46 and 48) is granted in part and denied in part. The defendants are directed, as soon as practicable, to make available for review by a third party retained by the plaintiffs the Adorama source code, as well as the commit log for Adorama's .Net files. This review will take place at Adorama's headquarters. In addition, the parties are directed to meet and confer, in person, within one week of the date of this order, to discuss the duration of the depositions of Mr. Braun and Mr. Roth. Magento is directed to produce to the plaintiffs, within one week of the date of this order, performance reviews of Mr. Korotun to the extent that they relate to work performed under the Magento Agreement, and to identify the relevant version of the Zend Framework.


SO ORDERED.


JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          December 4, 2013


21

Copies mailed this date:

Denise L. Savage, Esq.
Savage & Associates, P.C.
400 Blinn Road
Suite 1010
Croton-on-Hudson, NY 10520

Kenneth P. Norwick, Esq.
Norwick, Schad & Goering
110 East 59th Street, 29th Flr
New York, NY 10022

Matthew H. Sheppe, Esq.
Eric J. Vardi, Esq.
Reiss Sheppe LLP
425 Madison Ave.
New York, NY 10017

Patrick J. Sweeney, Esq.
Holland & Knight LLP
31 West 52nd St.
New York, New York 10019