```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -x
ALEXANDER INTERACTIVE, INC.,
ALEXANDER SCHMELKIN, and JOSH
LEVINE,

                        Plaintiffs,         12 Civ. 6608 (PKC)(JCF)

     - against -

ADORAMA, INC., ADORAMA ENTERPRISES
LLC, EUGENE MENDLOWITS, and MENDEL
MENDLOWITS,

                        Defendants.
- - - - - - - - - - - - - - - - - - - -x
MENDEL MENDLOWITS, ADORAMA
ENTERPRISES LLC, ADORAMA, INC., and
EUGENE MENDLOWITS,

                        Counter-Claimants,
     - against -

ALEXANDER INTERACTIVE, INC., JOSH
LEVINE, and ALEXANDER SCHMELKIN,

                        Counter-Defendants.
- - - - - - - - - - - - - - - - - - - -x
```

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANTS' MOTION TO AMEND THEIR COUNTERCLAIMS</u>

>                                    NORWICK, SCHAD & GOERING
>                                    Kenneth P. Norwick (KN 4622)
>                                    110 East 59th Street
>                                    New York, NY  10022
>                                    (212) 751-4440
>                                    ken@norwickschad.com
>                                    Attorneys for Plaintiffs as
>                                      Counterclaim Defendants

This Memorandum is respectfully submitted by plaintiffs as Counterclaim-Defendants in opposition to the defendants' motion for leave to amend their current counterclaims – filed on January 3, 2013 – to add a claim (actually a requested remedy) for specific performance.

Background

The background of this motion is set forth in the Declaration of Alex Schmelkin and the Affirmation of Kenneth P. Norwick submitted herewith. The Court is respectfully referred to those documents for their full contents. In brief, those documents establish:

The defendants' current counterclaims were filed on January 3, 2013, virtually a full year ago. Those counterclaims -- seven in number -- all seek money damages for alleged breaches and other alleged misfeasance. Since then, there has been exhaustive discovery in the case, including well over one million pages of documents and at least fifteen separate depositions. All that discovery has been based on the parties' pleadings as they existed at that time. Except for a few stray depositions, fact discovery is essentially completed, and the case is on the cusp of dispositive motions and then, if necessary, a trial.

Judge Castel's October 17, 2012 Scheduling Order (Docket #8) contained a strict deadline for amendments to the pleadings, and that deadline has long since passed. There has been no change to that part of that Order or its deadline. Defendants' motion

papers make clear that all of the purported "facts" that ostensibly support their current motion were know to them when they filed their initial counterclaims and that nothing was learned since then to justify this motion. The documents accompanying this Memorandum also establish that extensive new discovery would have to be conducted if this motion were granted, thus requiring substantial additional time and expense for the plaintiffs and further significant delay in the ultimate resolution of the case.

The Schmelkin Declaration also establishes the poisonous nature of the parties' relationship and their utter lack of trust and respect for each other. The record is also exquisitely clear that any forced continuation of their contractual relationship would require numerous discretionary expert technical and business decisions by AI and the close cooperation of both sides to implement AI's work. Any such forced continuation of the contractual relationship would manifestly be doomed to failure.

<u>The Applicable Law</u>

The governing this motion was succinctly set forth earlier this year by Judge Castel, quoting the Second Circuit, as follows:

> Although Rule 15 states that [t]he court should freely give leave when justice so requires, Rule 15(a)(2), Fed. R. Civ. P., "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 200 (2d Cir. 2007). In addition, the Second Circuit has made clear that "[w]here a scheduling order

>has been entered, the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause, and that [a] finding of good cause depends on the diligence of the moving party." Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003) (quotation marks omitted).

Gun Hill Road Service Station, Inc. v. ExxonMobil Oil Corp., 2013 U.S. Dist. LEXIS 63207, 08 Civ. 7956 (PKC) (denying motion). See also, Fernandez V. Wells Fargo Bank, N.A., 2013 U.S. Dist. LEXIS 97963 (S.D.N.Y. 2013) (Castel, J.) (denying motion); Toliver v. Office-Department of Corrections, N.Y.C., 2012 U.S. Dist. LEXIS 188631 (S.D.N.Y. 2012) (Francis, M.J.) (denying motion).

The Futility of the Motion

The contract that defendants now claim they want specifically performed is analytically identical to the one before the New York Appellate Division, First Department, earlier this year in Marriott Intl., Inc. v. Eden Roc, LLLP, 104 A.D.3d 583, 962 N.Y.S.2d 111 (1st Dept. 2013). There, the Court unanimously reversed a grant of specific performance, holding:

>The parties' detailed management agreement places full discretion with plaintiffs to manage virtually every aspect of the hotel. Such an agreement, in which a party has discretion to execute tasks that cannot be objectively measured, is a classic example of a personal services contract that may not be enforced by injunction (see e.g. Wien & Malkin LLP, v Helmsley-Spear, Inc., 12 AD3d 65, 71-72, 783 N.Y.S.2d 339 [1st Dept 1991], revd on other grounds, 6 NY3d 471, 846 N.E.2d 1201, 813 N.Y.S.2d 691 [2006][property management agreement a personal services contract]; Woolley v Embassy Suites, Inc., 227 Cal App 3d 1520, 1534, 278 Cal Rptr 719 [Cal App 1st Dist 1991];

4

Restatement 2d of Contracts, § 367).

See also, <u>The Board of Trustees of the Leland Stanford Junior University v. Seven Bridges Press, LLC</u>, 2003 U.S. Dist. LEXIS 20282 (S.D.N.Y. 2003), where the Court declared, applying California law:

> In this case, the application of the anti-forfeiture statute would result in reinstatement of defendant's rights of distributorship or co-publication. This, in turn, would require plaintiff and defendant to work together closely to sell LPL. At several points, the contract calls for the parties to work together in selling the product. For example, the contract provides "decisions to revise and/or reprint the Work shall be made by mutual agreement of [the parties], "all determinations concerning paper, printing and binding of the Work; the content and presentation of the cover and packaging of the Work; and the interior design of the Work shall be agreed upon by [the parties] in consultation," and "the list price for the Work in U.S. dollars shall be agreed upon and fixed by [the parties] in consultation"(Contract at 1-2).

The Court also noted, in rejecting specific performance, that the contract there entailed "a close, long term working relationship." Notably, the California case applied in <u>Seven Bridges</u> was explicitly embraced and adopted by the Appellate Division in <u>Marriott</u>, <u>supra</u>.

Here, it is indisputable that the underlying contract similarly requires AI to exercise "discretion to execute tasks that cannot be objectively measured," and it requires the parties "to work together closely" in the creation of the contemplated website. In light of the campaign of vilification and thuggery

waged by defendants against plaintiffs, and their utter refusal to "work together" with AI in the past, and in light of the applicable law set forth above, it is manifest that this is a paradigm case where specific performance is simply not available as a matter of law.

<u>Undue Delay and Prejudice to Plaintiffs</u>

It is apparent that defendants knew at the time they filed their initial Counterclaims a year ago all the "facts" they set forth now in support of their motion.  It is also apparent that they do not even claim that anything learned since then motivates the motion.  This is exactly the kind of dilatory, undue delay that Judge Castel has declared is a basis for denying such a late motion to amend.

This conclusion is especially appropriate where, as here, there was a Scheduling Order in effect that set a strict deadline for motions to amend such as this one, which deadline defendants here have cavalierly flouted by over a year.  See, <u>e.g.</u>, <u>Fernandez</u>, <u>supra</u>.

In addition, it is also indisputable that this motion comes very near the conclusion of exhaustive discovery in the case, all of which was based on the parties' pleadings as they existed when that discovery began.  Clearly, there was no opportunity or reason for plaintiffs to pursue discovery into a legal claim that did not -- and to date still does not -- exist.  This inability

to pursue discovery into the defendants' radical new claim, and the additional cost and delay that would necessarily be incurred if discovery is reopened to accommodate this new claim, is precisely the kind of prejudice that courts have held preclude post-discovery motions to amend.  See, e.g., <u>Xue Lian Lin v. Comprehensive Health Management</u>, 2009 U.S. Dist. LEXIS 29779 (S.D.N.Y. 2009) (Castel, J.); <u>Toliver</u>, <u>supra</u>.

<u>The Need to Choose Requested Remedies</u>

We recognize, of course, that Rule 8(a) permits "alternative" pleading.  But that Rule does not provide that a party can, very late in the litigation, and after virtually all discovery has been completed, amend a pleading to seek, for the first time, a form of relief that directly contracts all the relief its pleadings previously sought.  Indeed, defendants' motion comes at the cusp of dispositive motions, and then a trial.  We have found no case that upheld a motion seeking to amend a pleading to seek for the first time an "alternative" claim that radically contradicts all the movant's prior pleadings.

The very recent ruling in <u>Ross University School of Medicine, Ltd. v. Brooklyn-Queens Health Care, Inc.</u>, 2013 U.S. Dist. LEXIS 45949 (E.D.N.Y. 2013) is squarely in point.  There, the plaintiff originally sought both money damages and specific performance. The Court granted summary judgment dismissing the specific performance claim because the plaintiff was required at

7

the summary judgment stage to choose between its conflicting pleaded remedies, because it could no longer seek both. As the Court declared:

> Additionally, although a party may "plead inconsistent theories of recovery," because a summary judgment motion is "the procedural equivalent of a trial [in New York], a litigant must elect among inconsistent positions upon seeking expedited disposition." <u>Jones Lang Wootton USA v. LeBoeuf, Lamb, Greene & MacRae</u>, 243 A.D.2d 168, 177, 674 N.Y.S.2d 280 (1st Dep't 1998); <u>Unisys Corp. v. Hercules Inc.</u>, 224 A.D.2d 365, 367, 638 N.Y.S.2d 461 (1st Dep't 1996) (noting in context of breach of contract action that "[e]ven where a plaintiff may seek recovery on alternative theories, he must make an election of remedies at trial or upon submission of a motion for summary judgment, the grant of which is the procedural equivalent of a trial") (citations omitted) (internal quotation marks omitted).
>
> \* \* \* \*
>
> Although Ross was entitled under New York law to seek inconsistent theories of recovery <u>at the pleading stage</u>, Ross chose to pursue money damages as its full measure of recovery in its motion for summary judgment, thereby constituting its election of damages for its future loss over future specific performance of the Agreement. See <u>Jones Lang</u>, 243 A.D.2d at 177; <u>Unisys Corp.</u>, 224 A.D.2d at 367.

Id., at *61 (emphasis added).

Plainly, defendants motion comes not at "the pleading stage" but instead at the virtual end of discovery and the eve of summary judgment motions. This is simply not the time contemplated by Rule 8(a) for the assertion of "alternative" pleadings.

Conclusion

    For all of the foregoing reasons, defendants' motion to amend their pleading at this stage of the litigation should be denied in its entirety.

Dated: December 13, 2013

                        NORWICK, SCHAD & GOERING

                        By: s/  Kenneth P. Norwick
                             Kenneth P. Norwick (KN 4622)
                        110 East 59th Street
                        New York, NY  10022
                        (212) 751-4440
                        ken@norwickschad.com
                        Attorneys for Plaintiffs as
                          Counterclaim Defendants