```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
ALEXANDER INTERACTIVE, INC.,       : 12 Civ. 6608 (PKC) (JCF)
ALEXANDER SCHMELKIN, and JOSH      :
LEVINE,                            :        MEMORANDUM
                                   :        AND ORDER
          Plaintiffs,              :
                                   :
     - against -                   :
                                   :
ADORAMA, INC., ADORAMA ENTERPRISES :
LLC, EUGENE MENDLOWITS, and MENDEL :
MENDLOWITS,                        :
                                   :
          Defendants.              :
- - - - - - - - - - - - - - - - - -:
MENDEL MENDLOWITS, ADORAMA         :
ENTERPRISES LLC, ADORAMA, INC., and:
EUGENE MENDLOWITS,                 :
                                   :
          Counter Claimants,       :
                                   :
     - against -                   :
                                   :
ALEXANDER INTERACTIVE, INC, JOSH   :
LEVINE, and ALEXANDER SCHMELKIN,   :
                                   :
          Counter Defendants.      :
- - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

The defendants in this action, Adorama, Inc., Adorama Enterprises, LLC, Eugene Mendlowits, and Mendel Mendlowits (collectively, "Adorama") have filed a motion to compel production of documents from the plaintiffs, Alexander Interactive, Inc., Alexander Schmelkin, and Josh Levine (collectively, "Alexander Interactive" or "AI"). The defendants also seek to extend

discovery deadlines.  The plaintiffs, for their part, have cross-moved to compel production of three groups of documents from the defendants.  Both sides seek sanctions, each accusing the other of making a mockery of the Federal Rules of Civil Procedure.  (Letter of Denise L. Savage dated Dec. 5, 2013 ("Pl. Motion") at 2, 4; Defendants' Opposition to Pl. Motion ("Def. Opp. Memo.") at 2-3, 8; Plaintiffs' Opposition to Defendants' Motion to Compel ("Pl. Opp. Memo.") at 22-23).  For the reasons that follow, the defendants' motions are granted in part and denied in part, and the plaintiffs' motion is denied.

<u>Background</u>

    The full background of this case can be found in the Memorandum and Order dated December 4, 2013.  <u>Alexander Interactive, Inc. v. Adorama, Inc.</u>, No. 12 Civ. 6608, 2013 WL 6283511, at *1-2 (S.D.N.Y. Dec. 4, 2013).  The facts pertinent to the instant motion are as follows.

    In 2010, Adorama, an electronics retailer, hired Alexander Interactive, a web design and engineering firm, to design a new website that could run on a Magento eCommerce platform.  (Second Amended Complaint ("2d Am. Compl."), ¶¶ 9-10, 15, 19). The website was to be completed by May 2011.  (Defendants' Memorandum of Law in Support of Their Motion to Compel Production of Documents ("Def. Memo.") at 3).  Alexander Interactive hired outside contractors to

work on the project, including Amicon, a code development company based in India. (Def. Memo. at 3; Deposition of Alexander Schmelkin ("Schmelkin Dep."), attached as Exh. E to Declaration of Daniel J. Brown dated Nov. 20, 2013 ("Brown Decl."), at 357-360; Pl. Memo. at 3). Amicon billed almost three thousand hours of coding work on the Adorama project. (Def. Memo. at 3; Brown Decl., ¶ 15). As revealed in deposition testimony, Alexander Interactive complained to Amicon's CEO about "bad coding and poor execution" on the Adorama project. (Schmelkin Dep. at 361-64; E-mail of Alexander Schmelkin dated Oct. 26, 2011 ("Schmelkin E-mail"), attached as Exh. F to Brown Decl.).

By January 2012, the website had not yet been completed and the project was at risk of foundering. (2d Am. Compl., ¶¶ 35, 37). The plaintiffs contend that Adorama repeatedly requested changes to the site that were outside the agreed-upon scope of work, failed to pay properly submitted invoices, and refused to perform user acceptance testing on the code that Alexander Interactive delivered. (2d Am. Compl., ¶ 39; Pl. Opp. Memo. at 4-5). The defendants assert that the delays were due to Alexander Interactive's shoddy work and poor project management skills. (Def. Memo. at 3). In March 2012, Alexander Interactive sent Adorama a termination notice. (2d Am. Compl., ¶¶ 37-39). In an attempt to salvage the project, non-party Magento was recruited to

3

perform an audit of Alexander Interactive's work. (Declaration of Glen Holman dated Oct. 28, 2013, attached as Exh. C to Brown Decl., ¶ 11)). The audit allegedly revealed significant problems with the code delivered by Alexander Interactive. (Def. Memo. at 3).

Adorama subsequently launched a new website, with Magento providing services that had been originally assigned to the plaintiffs. (2d Am. Compl., ¶¶ 60, 68). Alexander Interactive brought suit, alleging that Adorama infringed its intellectual property by copying the code provided by Alexander Interactive. (2d Am. Compl., ¶¶ 44-57, 61-65; Pl. Opp. Memo. at 1-2).

<u>Standard</u>

Parties are entitled to discovery of documents in the "possession, custody or control" of other parties, Fed. R. Civ. P. 34(a)(1), so long as they are "relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1). "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." <u>Condit v. Dunne</u>, 225 F.R.D. 100, 105 (S.D.N.Y. 2004); <u>see also</u> <u>Nunez v. City of New York</u>, No. 11 Civ. 5845, 2013 WL 2149869, at *2 (S.D.N.Y. May 17, 2013). To be relevant, the requested documents must at least "appear[] reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The burden of demonstrating relevance is on the party seeking discovery. <u>Trilegiant Corp. v. Sitel Corp.</u>, 272 F.R.D.

4

360, 363 (S.D.N.Y. 2010); <u>Mandell v. Maxon Co.</u>, No. 06 Civ. 460,
2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007).  "Once relevance
has been shown, it is up to the responding party to justify
curtailing discovery."  <u>Fireman's Fund Insurance Co. v. Great
American Insurance Co. of New York</u>, 284 F.R.D. 132, 135 (S.D.N.Y.
2012) (internal quotation marks omitted).

<u>Discussion</u>

   A.   <u>Motion to Compel AI to Produce Amicon Documents</u>

   Adorama seeks to compel the production of documents in the
possession of Amicon, which it characterizes as Alexander
Interactive's "long-standing affiliate." (Def. Memo. at 1).  The
documents sought include all internal communications regarding the
Adorama project, all communications and written agreements between
Amicon and Alexander Interactive, and all communications between
Amicon and third parties relating to the Adorama project.  (Def.
Memo. at 12).  Adorama asserts that these documents come within the
scope of the defendants' December 2012 request for production of
documents.  (Def. Memo. at 6).  Alexander Interactive opposes the
motion, contending (1) that documents held by Amicon are not in its
custody or control and (2) that Adorama has already received all
coding done by Amicon on the Adorama project, as included within
the work delivered by Alexander Interactive, as well as all
correspondence between Alexander Interactive and Amicon employees

relating to the Adorama project.  (Pl. Opp. Memo. at 2, 13; Def. Memo. at 6-7).  Counsel for the parties met and conferred regarding the request but were unable to come to a resolution.  (Def. Memo. at 6-7; Reply Declaration of Daniel J. Brown dated Dec. 11, 2013 ("Brown Reply Decl."), ¶ 2).

The first hurdle that the defendants must surpass is the "minimal showing of relevance required under the Rules." <u>In re Initial Public Offering Securities Litigation</u>, No. 21 MC 92, 2004 WL 60290, at *2 (S.D.N.Y. Jan. 12, 2004); <u>see also</u> <u>In re Terrorist Attacks on September 11, 2001</u>, 293 F.R.D. 539, 546 (S.D.N.Y. 2013). Here, the documents requested are clearly pertinent to Adorama's defenses and counterclaims, which include allegations of negligence, shoddy work, and  misrepresentation by Alexander Interactive.  (Def. Memo. at 5-6; Pl. Opp. Memo. at 8).  The quality of coding provided by Alexander Interactive and its subcontractors, as well as any communications that show Alexander Interactive's awareness of quality control issues, are directly relevant to Adorama's contentions.  The defendants have presented ample evidence to satisfy their burden, including testimony and e-mails referencing disputes over the code Amicon delivered and Alexander Interactive's alleged decision to hire the cheapest Amicon developers for the Adorama project.  (Def. Memo. at 5-6; Schmelkin Dep. at 360-66; Schmelkin E-mail).

Next, the defendants must establish Alexander Interactive's "possession, custody, or control" over the requested documents, as required by Rule 34 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 34(a)(1).  "The term control in the context of discovery is to be broadly construed."  <u>New York ex rel. Boardman v. National Railroad Passenger Corp.</u>, 233 F.R.D. 259, 268 (N.D.N.Y. 2006); <u>see Northern Mariana Islands v. Millard</u>, 287 F.R.D. 204, 210 & nn.40-41 (S.D.N.Y. 2012).  For a party to have control over a third party's documents, "all that is required is that the party have the right, authority, or practical ability to obtain the documents at issue." <u>Gruss v. Zwirn</u>, No. 09 Civ. 6441, 2013 WL 6098482, at *5 (S.D.N.Y. Nov. 20, 2013) (internal quotation marks omitted); <u>see also Thai Lao Lignite (Thailand) Co. v. Government of Lao People's Democratic Republic</u>, 924 F. Supp. 2d 508, 515 (S.D.N.Y. 2013) (control "encompasses documents to which a party has access and the practical ability to possess") (internal quotation marks omitted); <u>United States v. Stein</u>, 488 F. Supp. 2d 350, 360-61 (S.D.N.Y. 2007) (collecting cases).  To determine a responding party's "practical ability" to obtain documents from a non-party, courts in this district have looked to the existence of cooperative agreements or contracts between the responding party and non-party, the extent to which the non-party has a stake in the outcome of the litigation, and the non-party's past history of cooperating with document

requests.  See, e.g., In re NTL, Inc. Securities Litigation, 244 F.R.D. 179, 195 (S.D.N.Y. 2007), aff'd sub nom. Gordon Partners v. Blumenthal, No. 02 Civ. 7377, 2007 WL 1518632 (S.D.N.Y. May 17, 2007); Golden Trade, S.r.L. v. Lee Apparel Co., 143 F.R.D. 514, 525 (S.D.N.Y. 1992).  Where control is contested, the party seeking production of documents bears the burden of establishing the opposing party's control over those documents.  See Wiwa v. Royal Dutch Petroleum Co., No. 96 Civ. 8386, 2009 WL 529224, at *2 (S.D.N.Y. Feb. 17, 2009); In re Flag Telecom Holdings, Ltd. Securities Litigation, 236 F.R.D. 177, 180 (S.D.N.Y. 2006).

Relying on the expansive interpretation of "control," the defendants point to the close and continuing working relationship between the plaintiffs and Amicon and various instances where both Alexander Interactive and Amicon characterized Amicon as "AI Mumbai" or as Alexander Interactive's "Mumbai operation."  (Def. Memo. at 2, 4-5, 8-10).  The defendants also highlight the nearly 3,000 hours of work that Amicon billed on the Adorama project as proof of their close connection to the plaintiffs.  (Def. Memo. at 3; Brown Reply Decl., ¶ 15).  Adorama contends that, given this relationship, Amicon is unlikely to deny a request from Alexander Interactive to produce documents.  (Def. Memo. at 7-10).  Thus, they reason, Alexander Interactive has the "practical ability" to obtain documents from Amicon.

In response, the plaintiffs state that while Amicon performed work for Alexander Interactive, their relationship was no different than that with other coding subcontractors. (Pl. Opp. Memo. at 14-15). Although both Mr. Schmelkin and Mr. Shinde, the CEO of Amicon, at times referred to Amicon as "AI Mumbai," the plaintiffs assert that this was merely a way of describing an "offshore team" arrangement that is common in the industry. (Pl. Opp. Memo. at 9, 11-12, 15). According to the plaintiffs, this is mere puffery and nothing more than an echo of the marketing phrases on Amicon's website. (Pl. Opp. Memo. at 12-13). The two companies do not share any partners, directors, employees, investors, officers, or shareholders. (Pl. Opp. Memo. at 9-11). The plaintiffs also represent that there are no written agreements between Alexander Interactive and Amicon that would provide a basis for document production. Finally, Amicon has no apparent interest in this litigation.[1]

On the facts presented, there is no sufficiently strong

---

[1] The plaintiffs also contend that the defendants must show that India law does not prevent Amicon from turning documents over to Alexander Interactive, citing Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 138 (2d Cir. 2007). (Pl. Opp. Memo. at 21-22). While it is not necessary to reach this issue, it should be noted that foreign law may not be determinative in this context. See Chevron Corp. v. Donziger, __ F.R.D. __, 2013 WL 5575833, at *19 (S.D.N.Y. Oct. 10, 2013) (interpreting Shcherbakovskiy as holding only that foreign law was pertinent, not dispositive, in ordering production of documents from non-parties located abroad).

connection between Alexander Interactive and Amicon to support a finding of control. The two companies, although enjoying a consistent working relationship, are separate entities on different continents. There is no reason to believe that Amicon would allow Alexander Interactive access to its internal communications. Even where a parent-subsidiary relationship exists, other factors including "a showing that the two entities operated as one, demonstrated access to documents in the ordinary course of business, and an agency relationship" are considered when determining whether a finding of control may be made. Ssangyong Corp. v. Vida Shoes International, Inc., No. 03 Civ. 5014, 2004 WL 1125659, at *4 (S.D.N.Y. May 20, 2004) (internal quotation marks omitted); see also SEC v. Credit Bancorp, Ltd., 194 F.R.D. 469, 472 (S.D.N.Y. 2000). The plaintiffs allege that Amicon has no interest in this litigation, and the defendants have not shown otherwise. (Pl. Opp. Memo. at 11, 21). Nor is there any record of previous cooperation or document production by Amicon in this case. (Pl. Opp. Memo. at 11); cf. Chevron Corp., 2013 WL 5575833, at *17 (request supported where non-parties had history of producing documents).

The plaintiffs further contend that all correspondence between Alexander Interactive employees and Amicon employees has already been produced and that any agreement between the two is encompassed

in documentation already provided to Adorama.  (Pl. Opp. Memo. at 13-14).  However, to the extent that deposition testimony shows that there may be outstanding communications between Alexander Interactive and Amicon regarding the Adorama project (Schmelkin Dep. at 362), those are relevant and must be produced by Alexander Interactive.    In  addition,  any  agreement  between  Alexander Interactive and Amicon must be duly identified by the plaintiffs, even if, as the plaintiffs contend, these agreements are "generally informal and discuss only pricing matters."  (Pl. Opp. Memo. at 14).  However, Alexander Interactive is under no duty to produce documents  solely  in  Amicon's  possession,  including  Amicon's internal  communications  on  the  Adorama  project  or  any communications between Amicon and other third parties related to the project.  The plaintiffs are also not required to ask Amicon for such documents, as it is settled law that "a [responding] party . . . need not seek such documents from third parties if compulsory process against the third parties is available to the party seeking the documents."  Shcherbakovskiy, 490 F.3d at 138.

    B.   Plaintiffs' Motion to Compel

    The subject of the plaintiffs' motion to compel consists of 25 requests conveyed in three separate e-mails.

        1.   November 14 Deposition Requests

    During  October  and  November  2013,  the  plaintiffs  took

depositions of several Adorama employees.  (Pl. Motion at 1).  At these depositions, plaintiffs' counsel requested that additional documents be produced.  (Pl. Motion at 1).  The defendants, however, have "uniformly taken the position" that oral requests during depositions must be followed with a written demand, to which the defendants then have 30 days to respond.  (Def. Opp. Memo. at 5).  According to the defendants, this practice is the proper procedure under the Federal Rules of Civil Procedure and also serves to avoid duplicative requests, reduce confusion, and promote efficiency.  (Def. Opp. Memo. at 5).[2]  On November 13, defendants' counsel sent plaintiffs' counsel an e-mail to verify whether there were any outstanding requests from the depositions (E-mail of Matthew Sheppe dated Nov. 13, 2013, attached as Exh. 9 to Def. Memo.), to which plaintiffs' counsel responded with an e-mail containing 21 requests (E-mail of Denise Savage dated Nov. 14, 2013, attached as Exh. B to Pl. Motion).  Several weeks later, Alexander Interactive requested to meet and confer to discuss the

---

[2] While Rule 34 contemplates only written document requests, it is common practice in this District for lawyers to make oral requests during depositions.  See, e.g., Jackson v. Novell, Inc., No. 94 Civ. 3593, 1995 WL 144802, at *1 (S.D.N.Y. April 3, 1995). Such oral requests may be enforced in motions to compel.  Id.  It is also common practice for lawyers to "follow-up oral requests for documents made at a deposition with a confirming letter." Employers Insurance Co. of Wausau v. Nationwide Mutual Fire Insurance Co., No. 05 CV 0620, 2006 WL 1120632, at *2 (E.D.N.Y. April 26, 2006).

outstanding demands.  (E-mail of Matthew Sheppe dated Dec. 4, 2013

("Sheppe 12/4/13 E-mail"), attached as Exh. 4 to Def. Opp. Memo.).

In response, defendants' counsel indicated that they were free to

meet the following week, by which time they would also have

responded to the requests, and they reiterated their view that they

had 30 days to respond to the requests.  (Sheppe 12/4/13 E-mail).

      2.   November 18 www.aiexposed.com Optimization Requests

In a November 18, 2013 e-mail, the plaintiffs demanded "all

documents relating to [the] defendants' attempt to optimize the

www.aiexposed.com website."  (Pl. Motion at 1; E-mail of Denise

Savage dated Nov. 18, 2013, attached as Exh. C to Pl. Motion).  The

defendants concede that this is a continuing request and contend

that any delay in responding can be explained by the time required

to "consider the matter, consult with [] counsel, review and search

for any responsive documents, including contacting a third party

based in England, and respond accordingly." (Def. Opp. Memo. at 4-

5).

      3.   December 2 eCommerce Requests

On December 2, 2013, Alexander Interactive requested documents

relating to Adorama's relationship with Magento's eCommerce Academy

and any funds paid to that entity by either the defendants or their

attorneys.  (E-mail of Denise Savage dated Dec. 2, 2013, attached

as Exh. D to Pl. Motion).  This request followed a deposition of

Gabriel Bouhatous, a principal of eCommerce Academy. (Def. Opp. Memo. at 2, 4; Pl. Motion at 2). The plaintiffs' motion to compel was filed three days after making the request, in what the defendants deem an "outrageous violation of the spirit and letter of the Federal and Local Rules." (Def. Opp. Memo. at 4). Although the plaintiffs also characterize these requests as continuing requests, the defendants argue that the plaintiffs never previously requested information concerning eCommerce Academy or Mr. Bouhatous. (Def. Opp. Memo at 4 & n.5). Nor, allegedly, did the plaintiffs avail themselves of the opportunity to question Mr. Bouhatous on this issue during his deposition. (Def. Opp. Memo. at 4). In addition, the defendants note that the requests came after fact discovery had ended, although the Court's subsequent order on December 4, 2013 extended fact discovery through the end of the month. (Def. Opp. Memo. at 4).

    4.   Defendants' December 11, 2013 Response

    The defendants responded to Alexander Interactive's 25 outstanding requests on December 11, 2013, as promised in the e-mail correspondence with plaintiffs' counsel prior to the filing of the motion. (Def. Opp. Memo. at 1; Sheppe 12/4/13 E-mail; Letter of Matthew Sheppe dated Dec. 11, 2013 ("Sheppe 12/11/13 Letter"), attached as Exh. 5 to Def. Opp. Memo.). Only three requests were objected to entirely -- the request for Adorama employee Bill

14

Parnes' calender reflecting any meetings with Alexander Interactive
from June 2010 to February 2012; the request for Adorama consultant
Abe Steinberg's calender, invoices, and underlying billing to
Adorama; and the request for all documents relating to work done by
Adorama consultant IT Craft.  (Sheppe 12/11/13 Letter).

As to the other 22 requests, the defendants either agreed to
produce documents by December 20, 2013, stated they had already
produced all responsive documents, or stated could not find any
responsive documents.  (Sheppe 12/11/13 Letter).  In particular,
the defendants found no documents responsive to the November 18
requests regarding optimization of www.aiexposed.com, and agreed to
produce documents responsive to the December 2 eCommerce
communications requests.  (Sheppe 12/11/13 Letter).  Given the
defendants' comprehensive response, the plaintiffs' motion is
denied as to the 22 responded-to requests.  See U.S. Bank National
Association v. PHL Variable Insurance Co., No. 12 Civ. 6811, 2013
WL 1728933, at *3 (S.D.N.Y. April 22, 2013) (denying motion to
compel as moot where responding party agreed to turn over requested
documents); Estate of Townes Van Zandt v. Eggers, No. 05 Civ.
10661, 2007 WL 3145097, at *2 (S.D.N.Y. Oct. 26, 2007).

This leaves only the objected-to requests.  Local Civil Rule
37.1 requires the moving party to set forth individually and
specifically each discovery request to which its motion is

15

addressed and the "grounds upon which the moving party is entitled to prevail as to each request or response." S.D.N.Y. R. 37.1. The plaintiffs have not sustained their burden of establishing the relevance of the three outstanding requests. See Trilegiant Corp., 275 F.R.D. at 363.

Alexander Interactive characterizes the requests as continuing from the plaintiffs' Amended First Request for Production of Documents to Defendants and Demand for Initial Disclosure of All Documents -- which includes over 50 separate requests -- but provides no further specificity. (Pl. Motion at 1-2). The plaintiffs then assert that because the defendants did not immediately seek to quash the requests upon receiving them, they implicitly agree that these are continuing requests. (Pl. Motion at 2-3). This argument is without merit, as the defendants raise exactly this objection in their answer and protest that they should not be "tasked with proving a negative." (Def. Opp. Memo. at 3). Similarly, "the Court cannot be tasked with performing the functions of [Alexander Interactive's] legal counsel" in attempting to discern whether these requests are indeed encompassed within the plaintiffs' original requests. Kilkenny v. Greenberg Traurig, LLP, No. 05 Civ. 6578, 2008 WL 371808, at *1 (S.D.N.Y. Feb. 7, 2008) (denying motion to compel for failure to comply with Local Civil Rule 37.1); see also Wheeler v. Citigroup, No. 11 Civ. 4721, 2012

16

WL 2953728, at *6 (S.D.N.Y. July 20, 2012).  Finally, even if these requests were shown to be continuing, there is no basis for assuming they are necessarily relevant.  Relevance is mentioned only cursorily in relation to the December 2 requests, and is otherwise not addressed at all.  (Pl. Motion at 1-2).  The plaintiffs' motion to compel is therefore denied.

    C.  <u>Extension of Discovery Deadlines</u>

The defendants seek to extend fact discovery to February 7, 2014 from the current deadline of December 31, 2013.  The basis for the request is the plaintiffs' production on November 1, 2013, the day after fact discovery was originally scheduled to close, of an external hard drive containing the "entire website created by [Alexander Interactive] in its final incarnation at the time [Alexander Interactive] terminated the [Master Services Agreement." (Letter of Matthew Sheppe dated Nov. 27, 2013 ("Sheppe 11/27/13 Letter") at 1-2).  Log-in information for the drive, which was password-protected, was provided on November 13, 2013.  (Sheppe 11/27/13 Letter at 2).  Adorama contends that this information is directly responsive to Request No. 11 of the defendants' first request for production of documents and should have been provided at the beginning of discovery.  (Sheppe 11/27/13 Letter at 2-3). Alexander Interactive opposes the request for an extension, allegedly because the defendants already had "their own version of

17

the data contained on this external drive in their possession and so could have already taken discovery with respect to this data." (Sheppe 11/27/13 Letter at 4).  As discussed above, however, the actual work that Alexander Interactive delivered to Adorama is at the heart of this lawsuit, and it is not unreasonable to think there may be differences between what Adorama contends it received and what Alexander Interactive contends it delivered.

Adorama is therefore entitled to a full review of the contents of the external drive.  The defendants' request is granted, and fact discovery will be extended to February 7, 2014, solely for the purposes of taking discovery concerning the contents of the external computer drive that the plaintiffs produced on November 1, 2013.  This may include discovery relating to the contents and compilation of the external drive and any discrepancies that may be found between the data on the drive and the data already in the defendants' possession, as well as "a forensic inspection of [Alexander Interactive's] computer system and servers to determine when the contents of the drive were prepared, assembled, modified, and downloaded from [Alexander Interactive's] servers onto the external drive." (Sheppe 11/27/13 Letter at 3).  The deadline for the parties to complete expert discovery will also be extended to accommodate this scheduling change.  The parties shall exchange initial expert reports by February 28, 2014, exchange rebuttal

18

reports by April 18, 2014, and complete expert discovery by June 6, 2014.

The defendants also request that the deadline to take the depositions of Jeremy Villano and Jaime Singson be extended through January 15, 2014. As plaintiffs' counsel will be unavailable for a period of three weeks in late December, this request is reasonable. The deadline shall be extended accordingly.

D.   <u>Sanctions</u>

Both parties move, pursuant to Rule 37 of the Federal Rules of Civil Procedure, for sanctions. The plaintiffs seek sanctions in both motions (Pl. Motion at 4; Pl. Opp. Memo. at 22-23), while the defendants seek sanctions for the plaintiffs' motion to compel (Def. Opp. Memo. at 8). Rule 37(a) requires that, when a motion to compel is granted or discovery is provided after such a motion is filed, the court order the party "whose conduct necessitated the motion," its attorney, or both "to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless the conduct was substantially justified or the award would be unjust. Fed. R. Civ. P. 37(a)(5)(A); <u>Underdog Trucking, LLC v. Verizon Services Corp.</u>, 273 F.R.D. 372, 377 (S.D.N.Y. 2011). Both parties have already been cautioned that "any future discovery motion in this case must strictly satisfy the requirements of the Federal Rules of Civil Procedure, including Rule 11 and Rule

19

37(a)(1)." <u>Alexander Interactive, Inc.</u>, 2013 WL 6283511, at *9. Sanctions may be appropriate if a party "ignores requests or engages in delaying tactics," even if the party "doesn't explicitly refuse, or even agrees, to produce discovery." <u>Kelly v. City of New York</u>, No. 01 Civ. 8906, 2007 WL 1746912, at *2 (S.D.N.Y. June 15, 2007); <u>see also</u> <u>Residential Funding Corp.</u>, 306 F.3d at 112 (noting that "as a discovery deadline or trial date draws near, discovery conduct that might have been considered 'merely' discourteous at an earlier point in the litigation may well breach a party's duties to its opponent and to the court.").

The plaintiffs ask the Court to sanction the defendants for filing the motion to compel Amicon documents, contending the motion was meritless and "misleading." (Pl. Opp. Memo. at 9, 22-23). Alexander Interactive claims that Adorama provides only snippets of deposition testimony to create the impression of a special relationship between Alexander Interactive and Amicon. (Pl. Opp. Memo. at 22). However, both parties engaged in the selective excerpting of deposition testimony that the plaintiffs decry. While ultimately unpersuasive, the defendants made a good faith argument based upon the Second Circuit's broad definition of "control" and on indications in testimony and e-mails that Alexander Interactive had a sufficiently close relationship with Amicon to give it the "practical ability" to obtain documents.

Sanctions are not warranted.

In its motion to compel, Alexander Interactive argues that sanctions are warranted because the defendants refused to meet and confer regarding the requests and failed to timely produce the documents. (Pl. Motion at 4). Previously admonished as to the importance of the meet and confer requirement, Alexander Interactive, Inc., 2013 WL 6283511, at *2-3, plaintiffs' counsel now charges defendants' counsel with violating this duty. (Pl. Motion at 4). However, no meet and confer was necessary because e-mail correspondence appended to both parties' submissions clearly shows that defendants' counsel indicated it would provide responses within the week. (Sheppe 12/4/13 E-mail). And this amounted to, at most, a delay of several weeks in responding to the plaintiffs' three sets of requests. Such a delay, especially where the plaintiffs have not definitively established that the requests were continuing requests, is not sufficient to sustain sanctions. Cf. Kelly, 2007 WL 1746912, at *2-3 (sanctions warranted given four month delay in responding to discovery request, without any indication when production might begin).

In turn, Adorama seeks sanctions against Alexander Interactive, asserting the plaintiffs' "unnecessary" motion could have been avoided either by following the Federal Rules of Civil Procedure or by waiting a few days. (Def. Opp. Memo. at 1). While

the plaintiffs' action was premature, it may be explained by the imminent discovery deadline.   Under these circumstances, the defendants' request for sanctions is denied.

Conclusion

For the foregoing reasons, the defendants' motion to compel (Docket no. 70) is granted in part and denied in part.   To the extent they have not already done so, the plaintiffs shall produce all communications in their possession between Alexander Interactive and Amicon regarding the Adorama project, and identify any agreements between the two.   The plaintiffs' motion to compel (Docket no. 79) is denied as to the three outstanding requests for production.   Fact discovery will be extended to February 7, 2014, only for discovery related to the contents and creation of external hard drive recently produced by the plaintiffs.   Expert reports will now be due on February 28, 2014.   The deadline to take the depositions of Mr. Villano and Mr. Singson will be extended until January 15, 2014.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         January 6, 2014

22

Copies mailed this date:

Denise L. Savage, Esq.
Savage & Associates, P.C.
400 Blinn Road
Suite 1010
Croton-on-Hudson, NY 10520

Kenneth P. Norwick, Esq.
Norwick, Schad & Goering
110 East 59th Street, 29th Flr
New York, NY 10022

Matthew H. Sheppe, Esq.
Eric J. Vardi, Esq.
Reiss Sheppe LLP
425 Madison Ave.
New York, NY 10017

Patrick J. Sweeney, Esq.
Holland & Knight LLP
31 West 52nd St.
New York, New York 10019