UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
ALEXANDER INTERACTIVE, INC.,     :  Case No. 12 cv 6608 (PKC)(JCF)
ALEXANDER SCHMELKIN and JOSH LEVINE  :       ECF CASE
         :
    Plaintiffs-Counterclaim Defendants  :
         :
      -against-      :
         :
ADORAMA, INC., ADORAMA ENTERPRISES  :
LLC, EUGENE MENDLOWITS, AND MENDEL  :
MENDLOWITS,         :
         :
    Defendants-Counterclaim Plaintiffs  :
-------------------------------------------------------------- x

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION SEEKING AN ORDER (I) RULING THAT DEFENDANTS' COUNSEL WAIVED WORK PRODUCT PRIVILEGE AND (II) IMPOSING SANCTIONS ARISING FROM DEFENDANTS' VIOLATION OF THE NOVEMBER 20, 2013 ORDER ENTERED BY THE HONORABLE P. KEVIN CASTEL AND FEDERAL RULE CIVIL PROCEDURE 45

Alexander Interactive ("AI"), Alexander Schmelkin ("Schmelkin") and Josh Levine ("Levine," together with AI and Schmelkin, the "Plaintiffs"), file this memorandum of law in support of their motion ("Motion[1]") seeking an order (I) ruling that Adorama, Inc. ("Adorama"), Adorama Enterprises, LLC ("Adorama LLC"), Eugene Mendlowits ("EM"), and Mendel Mendlowits' ("MM," together with Adorama, Adorama LLC and EM, the "Defendants") counsel waived the work product privilege and (II) imposing sanctions arising from the Defendants' violation of the November 20, 2103 Order entered by the Honorable P. Kevin Castel and FRCP 45, and respectfully sets forth and represents:

---

[1] Plaintiffs respectfully assert that this Motion will be mooted if this Court enters a default judgment on the Second Amended Complaint and dismisses the Defendants' Amended Counterclaims, pursuant to the Plaintiffs' filed Omnibus Motion for Sanctions against the Defendants, filed on March 24, 2014.

1. On August 29, 2012, the Plaintiffs commenced the above captioned action (the "Action") against the Defendants.   Mr. Bouhatous and his company provided consulting services to AI in connection with AI's services provided to Adorama, which are the subject of the Action.

2. By order dated November 20, 2012, the Honorable P. Kevin Castel directed that all fact discovery be completed by February 15, 2013. Docket No. 12 cv 6608, Doc. No. 14 (the "Order").

3. Thereafter, while the parties obtained extensions of time to depose various witnesses, the Defendants never sought an extension of time to serve production requests, which time expired, by the Order of the court, and consent of the parties pursuant to said Order, on January 6, 2013.

4. In October 2013, the Defendants sought to depose Mr. Bouhatous, but because Mr. Bouhatous lives and works in France, the Defendants asked Mr. Bouhatous if he would waive service under the Hague Convention.  To do so, Defendants' counsel, Daniel Brown, Esq. ("Mr. Brown"), conducted correspondence with Mr. Bouhatous' counsel and cc'd Plaintiffs' counsel, Denise Savage, ("Ms. Savage") on correspondence to Bouhatous' counsel regarding a waiver of service under the Hague Convention and the conditions surrounding said waiver. As far as Ms. Savage knew from this correspondence, Mr. Bouhatous agreed to waive such service if AI would waive any confidentiality provisions under the agreement between Mr. Bouhatous' company and AI.  AI agreed to this condition.  Ms. Savage received no additional correspondence.

5. On November 25, 2013, Gabrielle Bouhatous, the President of MOTO, a/k/a Magento eCommerce and a third party witness, was deposed by the Defendants.

6. After ruminating about Mr. Bouhatous' testimony, the Plaintiffs' counsel suspected that Mr. Bouhatous had been coached by Defendants' counsel.  Based upon this belief, on December 3, 2013, Plaintiffs' counsel demanded a copy of all documents exchanged by and among the Defendants, Defendants counsel, Mr. Bouhatous and Mr. Bouhatous' counsel (the "Bouhatous Correspondence").

7. After Plaintiffs made an application to the Court seeking an order compelling production of the Bouhatous Correspondence, Mr. Brown finally produced on December 27, 2013 (relevant copies of which are annexed hereto and made a part hereof as **Exhibit A**).  The Bouhatous Correspondence discloses that Mr. Daniel Brown, the Defendants' counsel, engaged in secret discussions with Mr. Bouhatous' counsel, Frederic JeanGirard.

8. These discussions, among other things, included Mr. Brown's secret request (i.e. no document subpoena served nor cc of the emails to Plaintiffs counsel) that,

> Gabriel [Bouhatous] would send us any emails/narratives in his possession at eCommerce Academy showing the audits and reports sent back to AI.  We do have some information via discovery we can share under separate cover, but believe some information may be missing.  Having these documents sent to us in advance would focus and expedite the questioning and also refresh Gabriel's recollection of key events.

"Defendants' Document Request," *See* Exhibit A at page 1.  Accordingly, Mr. Brown, *without notice to Plaintiffs' counsel*, asked Mr. Bouhatous to produce documents to Mr. Brown.

9. Further, Mr. Brown also supplied Mr. JeanGirard with a *draft outline of topics, including specific questions that* he planned to question Mr. Bouhatous about at Mr.

Bouhatous' deposition.   See Exhibit A at pg. 1.   Mr. Brown also sent to Mr. JeanGirard a list of questions that Plaintiffs' counsel might ask Mr. Bouhatous.   See Exhibit A, pages 46-65.   Upon information and belief, to interfere with Plaintiffs' counsel's ability to ascertain that Mr. Brown had sought documents from Mr. Bouhatous, *through his counsel,* and provided a list of questions and topics for Mr. Bouhatous' deposition, *through Mr. Bouhatous' counsel*, Mr. Brown also advised Mr. JeanGirard as follows to interfere with the Plaintiffs' ability to ascertain this information during the deposition:

> Relatedly, I am not familiar with the scope of the attorney/client privilege in France, or if you have ever defended a witness in a deposition pursuant to the U.S. Federal Rules of Civil Procedure.  In that regard, AI's attorney (Denise Savage) likely will inquire of Mr. Bouhatous regarding his preparation for the deposition, and the substance of any communications between you and Mr. Bouhatous in connection with preparing for this deposition.  If you wish, you can direct Mr. Bouhatous not to answer any such questions as they would result in a waiver of your attorney client privilege.

> See Exhibit A at page 21(a).

8.  As a threshold issue, Mr. Brown's secret attempt to obtain documents via the Defendants' Document Request from Mr. Bouhatous after the court-ordered termination of the date by which discovery requests could be served (i.e. January 6, 2013), constituted a violation of the Judge Castel's Order.

9.  Based upon Mr. Brown's secret Defendants' Document Request (in violation of Judge Castel's Order) to and coaching of Mr. Bouhatous, in addition to Mr. Brown's coaching of Mr. Bouhatous' counsel to direct his client not to answer any questions in any event, if they were asked by Plaintiffs' counsel regarding Mr. Bouhatous, deposition preparation, the Plaintiffs seek an order of this Court

finding (i) that the Defendants counsel waived work product privilege and (ii) violated the Order and sanctioning the Defendants in connection therewith.

**ARGUMENT**

A. Defendants' Counsel Waived Work Product Privilege

Having delivered work product to third party witnesses (e.g. "I am annexing a draft outline of the topics, including specific questions, I [Dan Brown] plan to discuss with Gabriel during next week's deposition.  As you know we don't represent eCommerce or Gabriel, *so in order to maintain the confidentiality and privilege of this document*, we would appreciate if you discussed the topics with Gabriel by telephone or in person in lieu of forwarding it to him directly or leaving him a hard copy" *Email from Daniel Brown to Frederic JeanGirard*, November 18, 2013), Plaintiffs assert that the Defendants have waived work product with respect to all asserted work product documents relating to Bouhatos and hereby demand production of all work product documents in connection therewith. *See SEC v. Gupta*, 81 F.R.D. 169 (S.D.N.Y. 2012); *In re Weatherford Int'l Secs. Litigation*, 2013 U.S. Dist. LEXIS 170559 (S.D.N.Y. 2013).[2]

Defendants' counsel, in sending an outline of topics and list of questions, along with anticipated exhibits to be questioned upon, to Mr. Bouhatos' counsel, (1) produced a document (2) that was prepared in anticipation of litigation, and (3) and was prepared by or for a party, or by his representative.  Thus, work product (the "Work Product Document," Exhibit A, pp 45-61). *See Weatherford, supra. 2013 U.S. Dist. LEXIS 170559, *11.* Defendants also sent pre-marked exhibits to Mr. Bouhatous' counsel unbeknownst to Plaintiffs ("Pre-marked Exhibits").

---

[2] There is no selective waiver of work product privilege recognized in the Second Circuit. *In re Weatherford Int'l Secs. Litigation*, 2013 U.S.Dist. LEXIS 170559

Mr. Brown then disclosed this Work Product Document to Plaintiffs' counsel pursuant to a demand for production of documents. Disclosing the Work Product Document prepared in anticipation of litigation to a non-adversary or adversary, results in a waiver of the work product privilege.  *Id.* at *17. Accordingly, Plaintiffs seek an order of this Court directing the Defendants' counsel to produce all work product, and any underlying factual material explicitly referenced therein (*Id.* at *27), in connection with Mr. Bouhatous and his company and their employees.

B.  Defendants Must be Sanctioned for Violation Judge Castel's Order

In addition to Mr. Brown violating Rule 45 of the Federal Rules of Civil Procedure Judge Castel's Order by secretly trying to obtain documents (i.e. the Requested Documents") from Mr. Bouhatous without notice to the Plaintiffs (addressed in the Plaintiffs' Omnibus Sanctions Motion filed with the Court on March 24, 2014, Docket No. 12 cv 6608, Doc. No. 115), Mr. Brown violated the Order entered by Judge Castel, and knew he was violating this Order, as Mr. Brown sought to obtain the Requested Documents from Mr. Bouhatous in secret and without service of a subpoena.

As such, the Plaintiffs seek sanctions against the Defendants arising from Mr. Brown's misconduct and violation of Judge Castel's Order pursuant to FRCP 37(b).  In addition to an award of fees and costs to Plaintiffs in connection with drafting and filing of this Motion, the Plaintiffs request that the Defendants be further sanctioned for their misconduct and violation of Judge Castel's order by the exclusion of use of Mr. Bouhatous' deposition in support of any pleading filed, or admission at trial, in this Action.

> The court has considerable authority to impose sanctions for violations of discovery [footnote omitted] obligations, such as the spoliation of evidence or failure to comply in a timely manner with an appropriate discovery request [footnote omitted] or a court's discovery order. See, e.g., *Arista Records, LLC*, 633 F. Supp. 2d at 138. A court may also sanction parties for sustained uncooperative conduct during discovery, even

if no single act in the uncooperative party's course of conduct would, on its own, warrant sanctions.  This power derives from both Rule 37 and the federal courts' inherent supervisory power. *Id.* at 138; *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 191 (S.D.N.Y. 2007) (internal citation omitted); *Zubulake IV*, 220 F.R.D. at 216 (internal citations omitted) Remedies that the court may impose for discovery violations include -- in ascending order of harshness -- an order directing the noncompliant party to provide further discovery; shifting of costs, including attorneys' fees, incurred by the other parties in connection with the discovery violation; imposing fines payable to the court on the culpable party or its attorneys [footnote omitted]; an instruction informing the jury of the discovery breach [footnote omitted]; an [footnote omitted] order precluding the noncompliant party from using at trial or on motions particular items of evidence that were withheld during discovery; an order establishing particular facts, issues, claims, or defenses related to the discovery abuse against the noncompliant party [footnote omitted]; or the entry of a default judgment, dismissal, or declaration of a mistrial ("terminating sanctions").*See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC*, 685 F. Supp.2d 456, 469 (S.D.N.Y. 2010) ("Zubulake Revisited"), abrogated on other grounds by *Chin*, 685 F.3d at 162; Fed. R. Civ. P. 37(b)-(f).

The district court has broad discretion to determine an appropriate sanction for discovery violations based on the facts of the particular case. *Residential Funding Corp.*, 306 F.3d at 101; *Fujitsu Ltd.*, 247 F.3d at 436 (internal citations omitted); *Arista Records, LLC*, 633 F. Supp. 2d at 141 (citing *West*, 167 F.3d at 779-80; *Fujitsu Ltd.*, 247 F.3d at 436). An appropriate sanction is one that will: (1) deter parties from violating discovery obligations; (2) place the risk of an erroneous judgment on the party that wrongfully created the risk; and (3) restore the prejudiced party to the same position that it would have been in absent the discovery violation by an opposing party. See, e.g., *Chin*, 685 F.3d at 162 (quoting *Byrnie*, 243 F.3d at 107); *West*, 167 F.3d at 779 (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)). A court should impose the least stringent sanction that will accomplish these goals. *Passlogix, Inc.*, 708 F. Supp. 2d 378, 2010 WL 1702216, at *35 (*citing Zubulake Revisited*, 229 F.R.D. 422, 2010 WL 184312, at *6).

Thus, the severity of the sanction should depend on the extent of the discovered party's non-compliance with discovery obligations, the degree of that party's culpability, and the extent to which the non-compliance prejudiced the other parties. A strong showing with respect to one of these factors may warrant sanctions even if proof with regard to the other two factors is weak or absent. For example, particularly serious discovery violations, such as the spoliation of highly relevant evidence, may warrant harsh sanctions even if the violation was merely negligent. *See Residential Funding Corp.*, 306 F.3d at 108 ("The sanction of an adverse inference may be appropriate in some cases involving the negligent destruction of evidence because each party should bear

the risk of its own negligence." (citing *Kronisch*, 150 F.3d at 126; *Turner v. Hudson Transit Lines*, 142 F.R.D. 68, 75 (S.D.N.Y. 1991)) .

Although the court may impose sanctions even if the discovery violation did not prejudice the other parties, the absence of prejudice generally militates toward the imposition of a lesser sanction. *See Passlogix, Inc.*, 708 F. Supp. 2d 378, 2010 WL 1702216, at *36("Preclusion is a harsh sanction preserved for exceptional cases where a [. . .] party's failure to provide  [41] the requested discovery results in prejudice to the requesting party." (quoting *Tracy v. NVR, Inc.*, 2009 U.S. Dist. LEXIS 90778, 2009 WL 3153150, at *8 n.15 (W.D.N.Y. Sep. 30, 2009))). The noncompliant party bears the burden to demonstrate that the other parties did not suffer any prejudice from the spoliation. *Zubulake Revisited*, 229 F.R.D. 422, 2010 WL 184312, at *5. Where the discovery violation involves spoliation or withholding of evidence, the absence of prejudice can be shown by demonstrating, for example, that the discovering party was able to obtain the same evidence from another source,[footnote omitted] or that during discovery it never asked for the evidence that was later shown to have been spoliated. [footnote omitted].

*Fitzpatrick v. Am. Int'l Group, Inc.*, 2013 U.S. Dist. LEXIS 77741, **30-39 (S.D.N.Y. 2013)(footnotes omitted).

Here, the Defendants violated Judge Castel's Order by seeking documents in this Action long after the deadline to serve discovery.  Further, the Defendants sought the Requested Documents and sent to Mr. Bouhatous' counsel the Work Product Document, also in secret and for use by Mr. Bouhatous' attorney to use to prepare and coach Mr. Bouhatous for his deposition.

The violation of the Court's Order and notice requirements under FRCP 45, together, are egregious enough to warrant the preclusion of Mr. Bouhatous' deposition from any hearing, motion and at the trial in the Action.  Add to the foregoing conduct the fact that, because the Plaintiffs were unaware of the Document Request by Mr. Brown and the delivery of the Work Product Document for Mr. Boutahous' deposition preparation, Plaintiffs did not know to question Mr. Bouhatous about the Request Documents and the Work Product Document and the potential impact on his testimony

and answers, and the Plaintiffs are extremely prejudiced by Mr. Bouhatous' unimpeached testimony.[3]

As Mr. Bouhatous came to this Country voluntarily for his deposition, and the Plaintiffs would be unable to depose him further without serving him with a subpoena pursuant to the Hague Convention, the prejudice to the Plaintiffs is apparent.

## CONCLUSION

Based upon the foregoing, the Plaintiffs respectfully request that the Court enter an order finding that:

1. Mr. Brown violated Judge Castel's Order;

2. Violated FRCP 45;

3. That the Plaintiffs were prejudiced by said conduct; and

4. Waived Defendants' Work Product Privilege.

And enter an order:

a. Precluding Mr. Bouhatous' deposition from all hearings, motions and trial in this Action;
b. Award attorneys' fees, expenses and costs incurred in connection with this Motion;
c. And award such other and further relief as this Court deems just and proper.

Dated: Croton on Hudson, New York
      March 27, 2014

                               SAVAGE LAW GROUP, PLLC
                               Attorneys for the Plaintiffs

                               By: /s/ Denise L. Savage
                               Denise L. Savage, Esq. (DLS-1498)
                               400 Blinn Road
                               Croton on Hudson, New York 10520
                               Tel: (914) 271-5150
                               Fax: (914) 271-5255
                               dsavage@savagelitigation.com

---

[3] Even if Plaintiffs counsel had known or tried to ask such questions, Mr. Brown advised Mr. Bouhatous' counsel to direct his client not to answer any such questions in any event. *See Exhibit A* at 21(a).